**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** **Plaintiff,** v. **JONATHAN SCOTT MASON,** **Defendant.** | **CRIMINAL NO. 5:20-69-KKC-MAS** **OPINION AND ORDER** |

*** *** ***

This matter is before the Court on Defendant Jonathan Scott Mason's motion to suppress evidence seized from his cell phone. (DE 20-1 at 2.) On October 14, 2020, the Court conducted a hearing on the motion. (DE 25.) For the following reasons, the Court denies the motion.

**I.  Facts**

On March 24, 2020, Kentucky State Police Sergeant Craig Miller received a referral from the Department of Homeland Security's investigative branch, alleging that a user of the social media application Kik had expressed sexual interest in children under various usernames between January 22, 2020, and March 20, 2020. Under the "Bobfever2018" username, the user stated that he made "content" with his stepdaughters. One of the stepdaughters was ten years old.

A user of the social media application WICKR similarly expressed sexual interest in children. He stated that he had a seven-year old stepdaughter ("A.M.") and a ten-year-old stepdaughter ("S.M."). He shared a picture of S.M. in a leotard in front of a banner reading "'The Force Dance Academy." The user also said that he would "mess" with S.M. when she

1

slept and had images of her sleeping with her hands down her pants. The same user stated that he had uploaded material to the file hosting site DROPBOX. One folder contained pictures of S.M at a Force Dance Academy event. Another folder contained pictures of S.M. asleep with her hand down her pants and a male child naked from the waist down. In some images, the male child's buttocks were visible. Based on the similarities in the postings between the social media accounts, Sergeant Miller believed that the user on WICKR was the same user as "Bobfever2018" on Kik.

Kik disclosed information to Sergeant Miller revealing that the account holder had the email address of jonathanmason260@yahoo.com and used a Samsung Android, Model SM-G955U. Chat conversations on the Kik and WICKR accounts further reflected the users' interest in sexual activity with children.

S.M. and A.M.'s mother, J. Mu, tagged a post on the Force Dance Academy's Facebook page. Mu's Facebook page suggested that she was in a relationship with Defendant. On March 25, 2020, Sergeant Miller and Homeland Security Investigations Special Agent Brandon Evan visited Mu's residence. They explained the purpose of their visit and excluded her cell phone as the device used to photograph S.M. Mu informed them that she had ended her relationship with Defendant the previous week after she discovered him transferring pictures from her computer to his phone. When she asked him if the pictures were of her daughters, he refused to answer or show his phone to her. She caused him to reset his phone to remove any photographs. Thereafter, Defendant moved out of her residence. Mu told officers that she would not be surprised if Defendant was the user sharing the images of S.M. She directed the officers to the apartment complex where she thought Defendant was currently staying.

The officers subsequently located a vehicle matching the description of Defendant's car in front of an apartment. Without a warrant, the officers knocked on the apartment's

door to conduct a knock and talk. A female occupant answered the door, and Sergeant Miller explained the purpose of the visit. The female occupant told officers that she did not live in the apartment but that she would get someone who could speak to the officers to make decisions. She called a male occupant over to the door. Sergeant Miller explained to the male occupant the purpose of the visit in detail. According to Sergeant Miller, upon seeing a picture of Defendant, the male occupant became angry and told the officers that Defendant was in the apartment. The male occupant told the officers to come inside and kick Defendant out of the apartment. The officers entered the apartment. The male occupant took the officers to the bedroom where Defendant was staying and opened the door. The male occupant told Defendant to leave the apartment. The officers asked Defendant to come outside, and Defendant complied.

Sergeant Miller asked Defendant if he had shoes and a cell phone. Defendant told the officers that his shoes and cell phone were inside. The male occupant invited Sergeant Miller back into the residence to retrieve Defendant's shoes and cell phone. Defendant did not object. The male occupant pointed out Defendant's cell phone to Sergeant Miller, who then promptly retrieved Defendant's items and exited the apartment.

While outside, the officers explained to Defendant that they intended to speak to him about the KIK and WICKR accounts. According to Sergeant Miller and Agent Evan, Defendant appeared to have an emotional response to the allegations. Defendant also mentioned a previous arrest for related behavior. Sergeant Miller asked Defendant for the passcode to his cell phone so that he could place the phone in airplane mode to preserve any evidence on the phone. Defendant did not provide the passcode but offered to put the cell phone in airplane mode himself. Defendant asked whether he could wipe the contents of his cell phone, which the officers forbid. The officers told Defendant that they were seizing his

phone and would obtain a warrant to search it. The officers did not search the cell phone at that time.

The officers later obtained a search warrant for Defendant's cell phone. From the search of the cell phone, law enforcement found child pornography, including images of S.M.

On July 16, 2020, Defendant was indicted for various child pornography offenses. (DE 1.) He subsequently moved to suppress the evidence obtained from his cell phone, arguing that exigent circumstances did not justify the warrantless entries and seizure of Defendant's cell phone. (DE 20-1 at 3.) The Court conducted a hearing on the motion on October 14, 2020. (DE 25.)

**II.    Analysis**

In seeking the suppression of evidence obtained from an allegedly unconstitutional search or seizure, the defendant has the burden to prove a violation of his constitutional rights. *See United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). If the defendant proves a violation of his constitutional rights, the exclusionary rule renders all evidence obtained from the constitutional violation inadmissible. *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008). The admissibility of evidence derivatively obtained from the constitutional violation is also barred under the "fruit of the poisonous tree" doctrine. *Id.* (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963)).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. A search or seizure inside the home is presumptively unreasonable if conducted without a warrant. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006); *see also Payton v. New York*, 445 U.S. 573, 586 (1980). Indeed, "[e]ntrance by the police into a home . . . is permissible only where justified by a warrant, exigent circumstances, or valid consent." *Smith v. City of Wyoming*, 821 F.3d 697, 709 (6th Cir. 2016). The same exceptions may also

4

justify warrantless seizures. *See United States v. Place*, 462 U.S. 696, 701 (1983) ("Where law enforcement authorities have probable cause to believe that a container holds . . . evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property . . . if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.").

Because officers did not have a warrant when they entered the apartment twice and seized Defendant's cell phone, their actions were presumptively unreasonable and therefore, unconstitutional, unless the Government establishes that a warrant exception applies. Here, valid consent, reasonable suspicion to seize, and exigent circumstances justified the warrantless searches and seizure.

### A.     Whether the Warrantless Entries Were Constitutional

Valid consent justifies a warrantless entrance into a home where police obtain voluntary consent from the individual whose property is searched or a third party who possesses—or who police *reasonably believe* possesses—"common authority" over the property. *See Illinois v. Rodriguez*, 497 U.S. 177, 181, 186 (1990). Whether an individual voluntarily consented to a search is based on the totality of the circumstances. *See United States v. Elkins*, 300 F.3d 638, 647 (6th Cir. 2002). The scope of such consent limits the scope of the related search. *See id.* at 648. "Even if a third party does not possess actual common authority over the area that was searched, the Fourth Amendment is not violated if the police relied in good faith on a third party's *apparent* authority to consent to the search." *United States v. Gillis*, 358 F.3d 386, 390 (6th Cir. 2004) (emphasis added). A third party has apparent authority if officers could objectively reasonably conclude "from the facts available that the third party had authority to consent to the search." *See United States v. Morgan*, 435 F.3d 660, 663 (6th Cir. 2006).

5

Here, valid consent justified both of law enforcement's warrantless entries into the apartment because officers obtained voluntary consent from the male occupant, an individual that officers could reasonably believe possessed common authority over the apartment. Based on the totality of the circumstances, the male occupant voluntarily consented to the first entry by telling the officers they could come inside, taking them to the bedroom where Defendant was staying, and opening the bedroom door. Officers did not exceed the scope of the male occupant's consent because they exited the apartment after discovering Defendant and asked Defendant to come outside; they did not search or seize anything at that point. The male occupant also voluntarily consented to the second entry because he invited Sergeant Miller back inside the apartment to retrieve Defendant's shoes and cell phone. Again, Sergeant Miller did not exceed the scope of the male occupant's consent, as he promptly exited the apartment after he retrieved Defendant's shoes and cell phone. Testimony did not indicate that the male occupant or Defendant objected to the officers entering the apartment at any time.

Further, the officers relied in good faith on the male occupant's apparent authority to consent to entry because, based on their interactions with him, the officers could objectively reasonably conclude that he had such authority. First, the female occupant insinuated that the male occupant had authority to grant entry through her representations to the officers. After indicating that she did not live in the apartment, she sought someone who could speak to the officers and make decisions related to the apartment. Thereafter, she retrieved the male occupant, implying that he was the individual with authority over the apartment. By giving officers permission to enter the apartment, leading them to the bedroom where Defendant stayed, and opening the bedroom door, the male occupant's behavior also suggested that he had authority over the premises. Moreover, the male occupant demonstrated apparent authority over the apartment since he had the ability to demand that

6

Defendant leave and to kick him out of the apartment. Accordingly, the officers' warrantless entries into the home did not violate the Fourth Amendment.

### B.     Whether the Warrantless Seizure of the Cell Phone Was Constitutional

An officer may seize personal property without a warrant if the officer has a reasonable suspicion that the property contains evidence of a crime. *See United States v. Avery*, 137 F.3d 343, 349 (6th Cir. 1997); *United States v. Stephens*, 129 F.3d 1266 (Table), 1997 WL 720412, at *3 (6th Cir. 1997). But "[t]he scope of the seizure must be reasonable, both in duration and in intrusiveness." *Bennett v. City of Eastpointe*, 410 F.3d 810, 825 (6th Cir. 2005) (citations and quotation marks omitted).

The officers properly seized Defendant's cell phone from the apartment because they had reasonable suspicion sufficient to indicate that his cell phone contained evidence of child pornography. Reasonable suspicion arose from his ex-girlfriend's statement indicating his likely involvement, the statement from his ex-girlfriend that he was transferring pictures from her computer to his phone, and the link between Defendant, an email address associated with him, and social media accounts from which the user expressed a sexual interest in children. The scope of the cell phone's seizure was reasonable in its intrusiveness, as, notably, the officers did not search the phone until after they obtained a warrant. The continued seizure of the cell phone was also reasonable given Defendant's emotional response to the allegations against him, his refusal to enter his cell phone's passcode, and his request to wipe the phone. These actions reasonably aroused suspicion that Defendant wanted to hide his cell phone's contents.

Exigent circumstances also justified the continued warrantless seizure of Defendant's phone. "The need to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless [seizure]." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (citations and quotation marks omitted); *see Place*, 462 U.S. at 700-01. Defendant's

destruction of his cell phone's contents became imminent when Defendant emotionally responded to the allegations implicating him, refused to enter his cell phone's passcode, offered to put the phone in airplane mode himself, and requested to wipe the cell phone. *See United States v. Bradley*, Criminal Action No. 09-136-JBC, 2010 WL 2471885, at *3 (E.D. Ky. June 16, 2010), *aff'd*, 488 F. App'x 99 (6th Cir. 2012) (destruction of evidence imminent when investigator seized suspect's laptop after explaining that law enforcement was investigating child pornography allegations and informing suspect that his IP address was implicated). Any exigent circumstance thus arose from Defendant's own behavior outside the apartment. *Cf. King*, 563 U.S. at 462 ("[A] warrantless entry based on exigent circumstances is reasonable when the police did not create the exigency by engaging or threatening to engage in conduct violating the Fourth Amendment."). Had the officers left the cell phone with Defendant, the evidence of child pornography on it would have been imminently destroyed, and therefore, the officers' seizure of the cell phone was constitutional. Accordingly, the Court must deny Defendant's motion to suppress evidence obtained from the cell phone.

### III. Conclusion

For the foregoing reasons, Defendant Jonathan Scott Mason's motion to suppress (DE 20) is DENIED.

Dated November 04, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY