UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| Plaintiff/Respondent,    ) | Criminal Action No. |
| ) | 5:20-cr-00069-KKC-MAS |
| v.    ) | and |
| ) | Civil Action No. |
| JONATHAN SCOTT MASON,    ) | 5:23-cv-00001-KKC-MAS |
| ) | |
| Defendant/Movant.    ) | |
| ) | |

**REPORT & RECOMMENDATION**

This matter is before the undersigned on Petitioner Jonathan Scott Mason's ("Mason") Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. Mason, on several grounds, alleges his counsel was ineffective. [DE 72]. The United States responded in opposition. [DE 81]. After thoroughly reviewing the record in its entirety, the Court recommends Mason's motion be denied for the reasons stated below.

**I.    RELEVANT FACTUAL BACKGROUND**

On July 26, 2020, a grand jury charged issued an indictment charging Mason with four separate offenses: (1) inducing a minor to engage in sexually explicit conduct for the purpose of producing child sexual abuse materials in violation of 18 U.S.C. § 2251(a); (2) distribution of child sexual abuse materials in violation of 18 U.S.C. § 2252(a)(2); (3) receipt of child sexual abuse materials in violation of 18 U.S.C.

1

§ 2252(a)(2); and (4) possession of child sexual abuse materials in violation of 18 U.S.C. § 2252(a)(4)(B).

The conditional plea agreement provides some factual background on the charges. Through various social media applications, the United States became aware of a user who expressed sexual interests in children. [DE 37, Page ID# 110]. For example, on the social media platform WICKR, the United States described the following activity from an account tied to Mason.

> The user "jettydillinger" stated that he had a 4-year-old daughter and two stepdaughters, aged 7 and 10 years. He further stated that he would "mess" with his 10-year-old step-daughter while she slept. Between March 20 and 21, 2020, "jettydillinger" shared an image of a 10-year-old minor who was actually the daughter of his livein girlfriend. The child was depicted in a leotard and she was standing in front of a banner which read "THE FORCE DANCE ACADEMY." He also stated that he had images of the 10-year-old asleep with her hand down her pants and panties.

[DE 37, Page ID# 110]. The investigation by the United States ultimately led to the discovery of over 2,300 various images and media in the custody and control of Mason depicting the ten year old engaging in various sexual acts. [DE 37, Page ID# 110-12].

On January 26, 2021, Mason pleaded guilty to Count 1 pursuant to a plea agreement conditioned upon his ability to appeal his suppression motion that was previously denied by the Court. [DE 36, 37]. Mason was eventually sentenced by the Court to 360 months imprisonment with supervision for the remainder of his life to follow. [DE 49].

Mason next appealed the matter to the Sixth Circuit, [DE 50], but to no avail. The Sixth Circuit affirmed the Court's decision on the suppression motion as well as the reasonableness of the sentence. [DE 63].

Mason then timely filed this habeas petition. [DE 72].

## II. ANALYSIS

In his petition, Mason asserts four grounds for relief: (1) trial counsel failed to investigate various legal defenses (*e.g.*, competency); (2) trial counsel failed to raise Mason's mental health and substance use disorder history; (3) trial counsel was ineffective for failing to retain an expert to opine about Mason's mental health and substance use disorders at sentencing; and (4) trial counsel failed to raise Mason's mental health and substance use disorders that were active during the pendency of his case. The Court will address each of these arguments in turn below.

### A. LEGAL FRAMEWORK

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Any non-constitutional error must constitute a "'fundamental defect which inherently results in a complete miscarriage of justice,'

3

or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). A § 2255 movant typically must prove any factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

One class of alleged constitutional error is ineffective assistance of counsel ("IAC") in violation of the Sixth Amendment. The standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), governs IAC claims. To prevail, a movant must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the movant. *Id*. at 687. To establish deficient performance, a movant must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687–88. "Judicial scrutiny of counsel's performance must be highly deferential[,]" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. A prejudice showing requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id*. at 694–95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id*. at 695. To satisfy the prejudice prong "[i]n a guilty plea context 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the deficient

4

performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Id*. at 730; *Strickland*, 466 U.S. at 697.

### B.   FAILURE TO INVESTIGATE COMPETENCY

For his first and second grounds, Mason argues that his trial counsel, Rachel Yavelak ("Yavelak"), failed "to conduct an investigation into or inform defendant of numerous, well-established defenses, including but not limited to: voluntary intoxication, mental illness or impairment, and others." [DE 72, Page ID# 419]. Mason continues with his second ground complaining that Yavelak did not investigate his substance use "which rendered Mason legally impaired." [DE 72, Page ID# 420]. Stated another way, Mason faults Yavelak for not seeking a competency evaluation for him during the pendency of the case.

"The diminished capacity defense is directly concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime [and] is available to negate the *mens rea* of a specific intent crime such as possession with intent to distribute." *Mallett v. United States*, 334 F.3d 491, 495 (6th Cir. 2003) (internal citations and quotations omitted). If a court has "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," the court should order a hearing to determine competency. 28 U.S.C. § 4241(a). Thus, the issue raised by Mason is whether Yavelak was deficient for failing to raise Mason's competency and whether there was any prejudice in her failure to do so.

5

To succeed on this failure to investigate claim, Mason must "demonstrate a reasonable probability that the court would have found him incompetent." *Mallett*, 334 F.3d at 497. In *Mallett*, the Sixth Circuit reviewed the district court's denial of a § 2255 petition alleging ineffective assistance of counsel for failure to investigate competency and a diminished capacity defense. *Id*. at 497–98. There, petitioner had "sustained a severe brain injury ... when he was struck by a car while riding a motorcycle." *Id*. at 493–94. The petitioner pointed to a psychologist's report saying that petitioner "was a man with limited intelligence and impaired cognitive function, who c[ould not] integrate information effectively." *Id*. at 494. The Sixth Circuit did not agree noting that "after observing [petitioner] throughout the proceedings, the district court determined that [petitioner] was indeed competent to stand trial." *Id*. at 497.

Here, there is little evidence to suggest that the Court would have found Mason incompetent for a few reasons. First, Yavelak interacted with her client constantly and affirmed again and again her belief that her client was competent. [*See, e.g.*, DE 60, Page ID# 365]. She detailed those efforts and repeated conversations with her client in her affidavit, something Mason does not appear to contest in his petition. [DE 81, Page ID# 475-481].

Second, the Court repeatedly inquired and was well versed in Mason's mental health history.

> THE COURT: Do you suffer from any mental or physical problems that you know of?
>
> THE DEFENDANT: Yes, Your Honor.

6

THE COURT: Can you tell me what they are?

THE DEFENDANT: I suffer from numerous psychiatric conditions; schizophrenia, manic depression, anxiety disorder, panic disorder, post traumatic stress disorder.

THE COURT: Okay.

THE DEFENDANT: That's all I know about at this point.

THE COURT: Okay. Now, you seem to have a pretty good grasp on the nature of your conditions. Have you been professionally diagnosed and treated for these conditions?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you take medications?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you take them according to your doctor's direction?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you currently taking medications?

THE DEFENDANT: Yes, Your Honor.

THE COURT: What are you taking, if you know?

THE DEFENDANT: Lithium, trileptal, Wellbutrin, Vraylar, ropinirole, Remeron, Prazosin. That's all the psychiatric medications, Your Honor.

THE COURT: All right. And do you take them according to your doctor's directions?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have they been administered to you regularly in the jail?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Do you feel like you're suffering from any manic or depressive episodes right now that would affect your ability to understand these proceedings?

THE DEFENDANT: Not that would affect my ability to understand, no.

>THE COURT: Okay. Do you usually feel those coming on?
>
>THE DEFENDANT: There are some tells.
>
>THE COURT: All right. And you're not experiencing any of those currently?
>
>THE DEFENDANT: No, Your Honor.
>
>…
>
>THE COURT: All right. Well, he seems to have a very good grasp of the importance of his medications and managing his conditions. In the past 24 hours, have you had any kinds of pills, medicines, or alcohol other than what we've already talked about?
>
>THE DEFENDANT: No, ma'am. No, Your Honor.

[DE 60, Page ID# 363-65]. At sentencing, the Court again repeatedly inquired and discussed Mason's current mental health and competency. [DE 59, Page ID# 339, 340, 348, 350].

Third, as demonstrated in the exchange at his rearraignment, Mason affirmed his ability to "understand the nature and consequences of the proceedings against him." 28 U.S.C. § 4241(a). In fact, there is not a single reference in the record that Court can find that would suggest otherwise.

In conclusion, there is nothing in this record that would have suggested to a reasonable lawyer that her client required a competency examination, or that Yavelak fell below a reasonable standard of performance by failing to request one. Furthermore, the record does not provide any evidence suggesting a reasonable probability that the Court would have found him incompetent. *Mallett*, 334 F.3d at 497. In fact, the record suggests just the opposite. Thus, the Court should deny relief on this first and second ground.

C. **RETENTION OF EXPERT WITNESS OR SEEKING MORE MEDICAL RECORDS**

For his third ground, Mason contends that Yavelak should have consulted expert opinions or subpoenaed medical records relevant to his mental health troubles. [DE 72, Page ID# 422]. Yavelak's strategic decision to not call an expert witness or request additional medical documents is well-protected. Moreover, the Court cannot find any prejudice to Mason for Yavelak's failure to call such witnesses or procure additional medical documents.

A finding of deficient counsel under *Strickland* requires the petitioner "prove that counsel's representation was not merely below average, but rather that it 'fell below an objective standard of reasonableness." *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). Courts "employ a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). "Strategic decisions of defense counsel are 'virtually unchallengeable.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 849 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001)); *see also Goldman v. Anderson*, 625 F.2d 135 (6th Cir. 1980) (stating that a failure to object, when it is a tactical decision by counsel, without more, will not provide a basis for habeas relief.).

Mason does not supply for the Court what, if any, additional testimony an expert or additional medical documents would have provided. Rather, Yavelak appears justified in not calling an expert or seeking additional documentation given the volume of information already before the Court. First, the Presentence Investigation Report ("PSIR") includes detailed information about Mason's mental

9

health journey from childhood through the time of sentencing, detailing his childhood of living in a violent home and suffering molestation through his medication practices for his bipolar diagnosis. [DE 51, Page ID# 197-201]. The information provided in the PSIR, as detailed by Mason, was abundant and detailed. Mason complains that an expert or additional medical records "would have established [his] ailments, about which he testified and attested to in his [PSIR]". [DE 72-1, Page ID# 429]. The counter argument could be made that these medical records were superfluous given Mason's detailed attestation to probation. Regardless, the Court had a fulsome view of Mason's personal trauma and mental health history before the sentencing.

Second, the parties all discussed and considered Mason's mental health issues at sentencing. Yavelak discussed Mason's health history.

> Because that person has to heal to go further, which is why I've asked the Court in the sentencing memo to recommend that he have a complete mental, psychiatric exam, complete medical exam, because while I think they have started, he needs to be fully diagnosed, fully treated, fully monitored on those levels, because we all know it takes a while to find the right cocktail that works best for someone.

[DE 59, Page ID# 339]. The Court relied upon that mental health history in applying the relevant sentencing factors.

> But he also needs help and treatment. This is the merciful component of the defendant's sentence, one in which he can be assessed for his mental health problems and his drug issues.

[DE 59, Page ID# 352]. There is little justification in calling an expert witness given the volume of information before the Court.

In the end, "whether to call a witness ... [is a] classic question[ ] of trial strategy that merit[s] *Strickland* deference." *Rayborn v. United States*, 489 Fed. App'x 871,

10

878 (6th Cir. 2012). Mason's claim of ineffective assistance as to the failure to call an expert witness or procure additional medical records does not meet the *Strickland* standard because it was objectively reasonable for Yavelak not to do so. Further, even if Yavelak's representation had been deficient, Mason cannot establish that the additional testimony would have affected his sentence. *See Blake v. United States*, No. 2:13-cr-20003, 2016 WL 4153618, at *6 (W.D. Tenn. Aug. 4, 2016) (rejecting a habeas petition on the grounds that counsel should have called witnesses at sentencing when the content of that testimony was well documented before the court). Here, the Court should deny Mason's third ground for relief.

D.  **KNOWING & VOLUNTARY PLEA**

Mason's fourth and final ground alleges his guilty plea was not knowing and voluntary given he was "using a score of drugs every day during trial and was legally impaired at every meeting with his attorney, including day they reviewed plea agreement, as well as at every court appearanace [*sic*] and when plea was signed" [DE 72, Page ID# 423]. The record suggests otherwise.

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal" because of the "strong presumption of verity" of the statements made under oath during the plea colloquy." *Id.* at 74. As detailed above, under oath, Mason answered several questions from the Court concerning the impact his medication had upon him at that time. As quoted at

11

length above, Mason was able to fully understand the proceedings, including the nature of the charges, the penalties, and the act of pleading guilty despite his medications. [DE 60, Page ID# 363-65]. In his petition, Mason does not to undercut these responses. Rather, Mason complains about "fear and a feeling of hopelessness" that convinced him to plead guilty given the uphill battle he faced. [DE 72-1, Page ID# 432-33]. Mason blames Yavelak for telling him that he "essentially [had] no chance at trial" as the only reason he pleaded guilty. [DE 72, Page ID# 423]. But "[t]he decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer." *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003)). Mason chose to plead guilty and there is nothing in the record to suggest he was under the influence of substances or under duress is so doing. For these reasons, the Court should deny Mason's fourth ground.

### III. CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473,484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a

habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Mason has asserted four separate grounds in his petition, although the first and second ground greatly overlap. As to those first two grounds, there is no indication in the record or otherwise that would suggest a reasonable probability that the Court would have found him incompetent as Mason now suggests. For ground three, the record provides ample detail about Mason's medical history such that there was little justification in Yavelak calling an expert witness or seeking even more medical documentation as to Mason's history. And finally, despite Mason's bald assertions to the contrary, everything in the record establishes that Mason's plea was voluntary, willing, and with full understanding of the consequences. Reasonable jurists would not find any of these conclusions debatable on the record before this Court.

Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

## IV.    CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS**:

1) The District Court **DENY**, with prejudice, Mason's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 [DE 72]; and

13

2) The District Court **DENY** a certificate of appealability as to all issues, should movant request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this the 12th day of June, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY